Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

Civ. No. 27633.

United States District Court
E. D. Pennsylvania.

Feb. 23, 1960.

Sanfjord B. Teu, II, and William S. McKinley, Washington, D. C. (with them on petition: Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C., Daniel P. Dooley, Regional Atty., Philadelphia, Pa.; Julius G. Serot and Joseph I. Nachman, Washington, D. C., Attys.), for petitioner.

Richard H. Markowitz, Philadelphia, Pa., for respondent.

Herman J. Obert, Philadelphia, Pa., for E. A. Gallagher & Sons.

VAN DUSEN, District Judge.

This cause came on to be heard on on the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10($l$) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160($l$) pending the final disposition of the matters involved herein pending before the Board, and upon issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on February 4, 1960. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

### Findings of Fact

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about January 8, 1960, E. A. Gallagher & Sons (herein called Gallagher), pursuant to the provisions of the Act, filed an amended charge to a charge originally filed with the Board on or about January 7, 1960, said amended charge alleging that Highway Truck Drivers Local 107, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (herein called respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4), subparagraphs (A) and (B), of the Act, 29 U.S.C.A. § 158(b) (4) (A, B).

3. The aforesaid charge and amended charge were referred to petitioner as

Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has reasonable cause to believe:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal office at Philadelphia, Pennsylvania, and at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Gallagher is engaged in the transportation of property by motor vehicle pursuant to a certificate issued by the Interstate Commerce Commission. Gallagher operates into and through several States of the United States, including the State of Pennsylvania, and in connection therewith maintains a terminal and warehouse facilities at Philadelphia, Pennsylvania, and elsewhere. In the operation of its business, Gallagher annually receives revenue in excess of $50,000, for the transportation of goods from one State to another.

(d) In the operation of its business, Gallagher contracts with persons who own and operate their own trucks (herein called owner-operators), to transport goods for Gallagher on a contract basis and to deliver the goods so transported directly to the consignee thereof in the Philadelphia area, or to a Gallagher terminal or warehouse. Said owner-operators are not members of respondent, and are self-employed persons within the meaning of Section 8(b) (4) (A) of the Act.

(e) In addition, Gallagher employs persons on an hourly basis as over-the-road drivers and helpers to transport goods to Philadelphia area, as well as local city drivers. These hourly paid employees of Gallagher are members of respondent and there existed a collective bargaining agreement between Gallagher and respondent covering the wages, hours and terms and conditions of their employment.

(f) Gallagher also employs other hourly paid workers at its terminal who are not members of or represented by respondent.

(g) For some time, and particularly since on or about December 21, 1959, respondent has been engaged in efforts to force or require Gallagher to partially cease doing business with the owner-operators, and to achieve that purpose has demanded that Gallagher sign a contract or otherwise be bound by this provision, with the intent of having respondent's Master freight industry contract changed to restrict Gallagher's doing business with such owner-operators:

"In other words, you are agreeing herein to effectuate the changes in our current collective bargaining agreement which will be the same as the changes applicable to all employers in the area." (page 3 of P–16)[1]

(h) Gallagher has refused to accede to the aforesaid demands of respondent on the ground that to do so would force or require Gallagher, in part at least, to cease or refrain from handling, transporting or otherwise dealing in products transported or to be transported by the owner-operators, or to cease doing business with owner-operators, since in most instances the owner-operators deliver directly to a consignee in the Philadelphia area, and to cease doing business with owner-operators unless all Gallagher's usable equipment and drivers are working and unless preference is given to owner-operators having contracts with respondent or another local of respondent's international union.

---

1. There are other terms of P–24, such as Article XXI, which would appear on their face to be usable to restrict Gallagher's doing business with the owner-operators, but such provisions have not been used in the past two years for such purpose.

(i) In furtherance and support of its demands set forth in Finding of Fact 4(g) above, and to force or require Gallagher to comply with same, since on or about January 4, 1960, respondent has picketed Gallagher's terminal and warehouse facilities in the Philadelphia area.

(j) In addition, since on or about January 4, 1960, respondent has ordered, directed, instructed and appealed to its members employed by Gallagher as over-the-road drivers, and as city drivers and helpers on an hourly basis, as set forth in Findings of Fact 4(e) and (f) above, to refuse in the course of their employment to perform services for Gallagher.

(k) By reason of the acts and conduct of respondent set forth in Findings of Fact 4(i) and (j) above, individuals employed by Gallagher and by other persons engaged in commerce or in an industry affecting commerce have refused in the course of their employment to process, transport or otherwise handle or work on goods, articles, materials or commodities.

(l) By the acts and conduct set forth in Findings of Fact 4(i), (j) and (k) above, respondent has engaged in, and has induced and encouraged individuals employed by Gallagher and by other persons engaged in commerce or in an industry affecting commerce, to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities, or to perform services, and has threatened, coerced and restrained Gallagher and other persons engaged in commerce or in an industry affecting commerce.

(m) Objects of the acts and conduct of respondent set forth in Findings of Fact 4(i), (j), (k) and (l) above, were and are (1) to force or require Gallagher to enter into a contract or agreement whereby Gallagher, at least in part, would cease or refrain or agree to cease or refrain from handling, using, selling, transporting, or otherwise dealing in the products transported or to be transported by owner-operators, or to cease doing business with owner-operators; (2) to force or require Gallagher, at least in part, to cease using, selling, handling, transporting, or otherwise dealing in the products of and to cease doing business with owner-operators; and (3) to force or require other persons to cease doing business with Gallagher.

(n) The acts and conduct of respondent set forth in Findings of Fact 4(i), (j), (k), (l) and (m) above, occurring in connection with the operations of Gallagher, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(i), (j), (k), (l) and (m) above, or similar or like acts and conduct.

See Discussion attached

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l).

(b) Gallagher is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) (ii) (A) and (B) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of said unfair labor practices will impair the policies of the Act as set forth in Section 1(b), 29 U.S.C.A. § 141(b) thereof.

3. To preserve the issues for the orderly determination as provided in the

Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4(i), (j), (k), (l) and (m) above, acts and conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

See Discussion attached and made part hereof.

### DISCUSSION*

The petition for an injunction under 29 U.S.C.A. § 160(l) was filed in this case on January 29, 1960. Senior Judge Kirkpatrick issued a Temporary Restraining Order and Order to Show Cause on February 1, 1960, with provision that the Temporary Restraining Order should expire on February 6, 1960, and that a hearing on the application for a preliminary injunction should be heard at 2 P.M. on February 4, 1960. Thereafter, the undersigned was assigned to the case in accordance with the Standing Order Governing the Assignment of Emergency Business adopted 6/9/59 with the approval of Chief Judge Ganey and Senior Judge Kirkpatrick (N.T.1). An Answer was filed by respondent on 2/3/60. The hearing was conducted on February 4 & 5, 1960. At the start of the hearing, a Motion to amend paragraph 5(h) of the Petition was allowed (N.T. 4 & 6).

The hearing disclosed a strong difference of opinion between the parties as to the applicability of clauses [2] used for several years in contracts between re-spondent and employers in the freight transportation industry to owner-operators of tractor-trailers who do business as independent contractors for such employers. Respondent concedes that Gallagher is dependent on such owner-operators for the specialized, unusual hauling it does, but contends that such clauses are inapplicable to such owner-operators of large tractor-trailer rigs.[3] Petitioner contends that respondent's insistence on Gallagher's being bound by these clauses and any terms, which Motor Transport Labor Relations, Inc. (hereinafter called "MTLR") and respondent agree to insert in the master contract for the freight transportation industry (see Finding of Fact 4(g)), is a violation of 29 U.S.C.A. § 158(b) (4) (i) or (ii) (A) and (B). The hearing judge finds that it is unnecessary to decide on the applicability of the above-mentioned clauses listed in footnote 2 to the owner-operators because the following factors, among others, constitute "reasonable cause to believe" Gallagher's charges attached to the petition are true:

A. Respondent has consistently insisted that Gallagher sign P–16 with the sentence quoted in Finding of Fact 4(g) in it. This clause would put Gallagher at the mercy of respondent and MTLR, of which Gallagher is not a member, if P–24 should be changed to restrict Gallagher's use of owner-operators (N.T. 174, 178).

B. Mr. Gallagher (managing partner of the Gallagher concern) testified to repeated oral demands by respondent's representatives that the terms of the master agreement (P–24) should be later changed to restrict the use by employers, whose employees are represented by respondent,[4] of owner-operators (N.T. 178–180).

C. Although respondent emphasizes the undesirability of giving Gallagher

---

* 4–CC–124.

2. Articles VII, XX and XXI of P–24.

3. Respondent relies particularly on Articles I and XXXI of P–24.

4. Gallagher has 20–25 employees represented by respondent (N.T. 150) and a total of 14 agreements with various unions. 95% of its equipment has been idle since January 4 as a result of a strike and picketing by respondent.

separate written safeguards (not made in its master contract) concerning business done with the owner-operators, it was willing to delete paragraph 9 of P-16 (N.T. 168-9 and P-22) and it admits it has had a special agreement with Gallagher for the past three years (P-3).

D. Respondent's Vice-President admitted that its representatives had discussed with Gallagher their desire to restrict the use of owner-operators by the parties to its freight transportation contracts, but denied it had any intent or purpose to take such action at this time.[5]

On the other hand, if respondent would give Gallagher written assurance that it would not interfere with its doing business with owner-operators, there would be no reasonable cause to believe the charges of Gallagher are true. For this reason, the following proviso is being added to the preliminary injunction:

"Provided, however, that this order will be dissolved (but jurisdiction will be retained so that petitioner may apply for relief if picketing is resumed at the places of business of A. A. Gallagher Warehousing Corporation) upon a showing to this court that respondent has offered in writing to enter into an agreement with E. A. Gallagher & Sons which incorporates the terms of Articles I, VII, XX, XXI, and XXXI of the Master Agreement with Motor Transport Labor Relations, Inc., as

it was executed on January 12, 1960 (P-24), and states that such terms of the Master Agreement shall be interpreted as having the meaning, with respect to the application of its terms to independent owner-operators (as defined in the Findings of Fact filed earlier today), ascribed to such terms by Mr. Matthews and Mr. Battisfore in their testimony before this court in this case on February 4 (N.T. 79-120a) and 5 (N.T. 248-254 & 295-355), 1960."

As indicated above (for example, A-D on page 168, one of the most damaging factors for respondent's position is its unwillingness to put in writing what its Vice-President, Mr. Battisfore, has stated is its position. If this is included in the written collective bargaining agreement, respondent's desires to restrict the business done by Gallagher with owner-operators are only "hopes." However, the first parenthesis in the above proviso is necessary because picketing has been carried out at the two places of business of a corporation, separate and distinct from the charging partnership, which has a similar name (see N.T. 129-131 as to picketing at Delaware Avenue and Tasker Street and N.T. 132 as to picketing at Pier 3). There is nothing in the evidence to indicate that this picketing was restricted to times when Gallagher's equipment was at these locations and the pictures P-25 to P-37 show the picketing being carried out near equipment

5. In determining whether petitioner had reasonable cause to believe the charge as filed by Gallagher, petitioner is entitled to consider respondent's course of conduct in recent previous controversies. See cases cited in footnotes 5 and 1 on pages 8 and 7 of Opinion of 8/10/59 in Schauffler v. Highway Truck Drivers & Helpers, Local 107 and Local 169, Civil Action No. 26700 [182 F.Supp. 556, on pages 560 and 559]. Petitioner emphasizes that in 1957 he was required to file a Petition for Adjudication in Civil Contempt against respondent (Document No. 13) due to its failure to comply with a preliminary injunction previously issued by this court pursuant to 29 U.S.C.A. § 160(*l*) (Documents Nos. 8 & 11) in a proceeding involving Gallagher's doing business with owner-operators (Civil Action No. 21929). The hearing judge agrees with respondent that if it only had a "hope" that it could restrict Gallagher's business with the independent operators at some future time, this petition should be denied (cf. Seafarers International Union of North America, Atlantic and Gulf Dist., Harbor and Inland Waterways Division, A.F.L.-C.I.O. v. N.L. R.B., 1959, 105 U.S.App.D.C. 211, 265 F. 2d 585, 592), but it is noted that this case reviewed a final determination of the Board, not a finding of reasonable cause under 29 U.S.C.A. § 160(*l*)), but petitioner has produced sufficient evidence to support his finding of reasonable cause, even though this is a close case in the view of the hearing judge.

of other truckers doing business with this independent employer (see, for example, P–30 (Pier 3); P–29 & P–32 (Pier 3); P–26 (Delaware Avenue and Tasker Street)). The evidence makes clear that several other truck companies did business with A. A. Gallagher Warehousing Corporation. Picketing of this corporation, as it has been carried out earlier this month, was in violation of the Labor Management Relations Act, as amended, 29 U.S.C.A. § 141ff. See Seafarers International Union case, supra footnote 5, page 169.

Petitioner was subpoenaed in person to testify at the hearing and to bring documents with him, and he did testify (N.T. 255–295) over the strenuous objection of his counsel. See Motion To Quash Subpoena (Document No. 5), Affidavit in Support of That Motion (Document No. 6), and Memorandum of Authorities in Support of Motion (Document No. 8). The subpoena has been marked C–3. The hearing judge made available to respondent one part of the petitioner's file (C–1) and placed another part of the file in a sealed envelope (C–2) after examining the entire file. P–1 and P–2 are also from this file. The hearing judge directed petitioner to testify to the extent necessary to show that he had investigated the matter and collected affidavits and other documents so that he had evidence on which to base his decision. Objections to questions asking what recommendations petitioner had sent to Washington in the course of arriving at his conclusion that the Petition should be filed were sustained and no questions were permitted asking petitioner the reason for reaching such conclusion.

A copy of the proposed preliminary injunction (as well as the proposed Findings of Fact and Conclusions of Law) submitted to the hearing judge by petitioner on February 4, 1960, were given to respondent at that time and no objection has been to the extent of the language or form of that injunction.

This preliminary injunction is being issued at this time and the hearing judge has had to work on the matter after midnight on the nights of February 4 and 5, 1960, largely because of respondent's insistence that the court has no power to continue the temporary restraining order for more than five days, even though the hearing has been completed (Cf. N.T. 359 ff.). This contention of respondent may well be in error. See Toledo P. & W. R. R. v. Brotherhood, 7 Cir., 1943, 132 F.2d 265.

The Memorandum of Petitioner and the Brief of respondent, which were furnished to the hearing judge on February 4, 1960, are being placed in the Clerk's file.

### Order Granting Temporary Injunction

This cause came on to be heard upon the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, briefs, argument of counsel, and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b) (4) (i) (ii) (A) and (B) of said Act, affecting commerce within the meaning of Section 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined.

Now, therefore, upon the entire record, it is

Ordered, adjudged and decreed that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondent Highway Truck Drivers and Helpers

Local 107, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it, or them, be and they hereby are, enjoined and restrained from:

(a) Picketing at or in the vicinity of any premises of E. A. Gallagher & Sons; or

(b) In any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by E. A. Gallagher & Sons, or by any other person engaged in commerce or in an industry affecting commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any service, or in any manner or by any means, threatening, coercing or restraining E. A. Gallagher & Sons, or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is (1) to force or require E. A. Gallagher & Sons, or any other employer, to enter into any contract or agreement, express or implied, whereby E. A. Gallagher & Sons, or such other employer, ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting, or otherwise dealing in any products transported or to be transported by any self-employed person, or doing business with any such self-employed person; (2) to force or require E. A. Gallagher & Sons to cease using, selling, handling, transporting, or otherwise dealing in the products transported or to be transported by any self-employed person, or to cease doing business with any self-employed person; or (3) to force or require any other person

to cease doing business with E. A. Gallagher & Sons;

See Rider Attached F. L. VD.

## Rider to Order Granting Temporary Injunction

Provided, however, that this order will be dissolved (but jurisdiction will be retained so that petitioner may apply for relief if picketing is resumed at the places of business of A. A. Gallagher Warehousing Corporation) upon a showing to this court that respondent has offered in writing to enter into an agreement with E. A. Gallagher & Sons which incorporates the terms of Articles I, VII, XX, XXI and XXXI of the Master Agreement with Motor Transport Labor Relations, Inc., as it was executed on January 12, 1960 (P–24), and states that such terms of the Master Agreement shall be interpreted as having the meaning, with respect to the application of its terms to independent owner-operators (as defined in the Findings of Fact filed earlier today), ascribed to such terms by Mr. Matthews and Mr. Battisfore in their testimony before this court in this case on February 4 (N.T. 79–120a) and 5 (N.T. 248–254 & 295–355), 1960.

## Order Dissolving Temporary Injunction

Upon representations by the respondent, Highway Truck Drivers and Helpers, Local 107, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, that on February 7, 1960, the respondent offered in writing to enter into an agreement with E. A. Gallagher & Sons which incorporated in terms of Articles I, VII, XX, XXI and XXXI of the Master Agreement with Motor Transport Labor Relations, Inc., as it was executed on January 12, 1960, and which stated that such terms of the Master Agreement were to be interpreted as having the meaning with respect to the application of its terms to owner operators in all respects as was ascribed to such terms by Messrs. Matthews and Battisfore in their testimony before this Court; and upon further

representations that E. A. Gallagher & Sons has since that time in writing agreed to contract with said Local 107 in accordance with terms of such offer, this Court is now satisfied that respondent Local 107 has complied with the terms of its Order dated February 6, 1960, and more particularly with the conditions of the Rider thereto, and it is therefore

Ordered that the Temporary Injunction heretofore issued by this Court be, and it hereby is dissolved; this Court, however, retaining jurisdiction of the parties and the subject matter hereof so that petitioner may apply for relief if picketing is resumed at the places of business of A. A. Gallagher Warehousing Corporation, pending the final disposition of the matters involved pending before the National Labor Relations Board.